## BARCLAYS BANK INTERNATIONAL, LTD., Plaintiff

v.

## PLEASANT HAVEN, INC., JOSEPH LaMALFA and ARNOLD FEINSTEIN, Defendants

Civil No. 1084/1980

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

September 30, 1981

ROBERT J. MURNAN, ESQ., St. Thomas, V.I., *for plaintiff*

PETER J. MARTIN, ESQ., St. Thomas, V.I., *for defendant Pleasant Haven, Inc.*

CHARLES S. WAGGONER, ESQ., St. Thomas, V.I., *for defendants LaMalfa and Feinstein*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION AND ORDER

The jurisdiction of this court to consider a Rule 60(b) motion, Fed. R. Civ. P. 60(b),[1] after the filing of a notice of appeal is the principal issue before this court. Assuming the court does have jurisdiction, it then must determine whether to vacate the previously granted summary judgment. The court concludes that it does have jurisdiction to consider the motion, but it will deny the motion to vacate.

This court on June 17, 1981, granted the motion of defendant Pleasant Haven, Inc., for summary judgment on its cross-claim against defendants Joseph LaMalfa and Arnold Feinstein (hereinafter referred to as defendants). The defendants on July 16, 1981 filed a timely notice of appeal. This was followed on August 6, 1981 by a motion to vacate the summary judgment.

### *Jurisdiction To Consider Motion*

Rule 60(b) permits a court to grant relief from a final judgment or order, and this court's summary judgment of June 17, 1981 is included under this rule. Traditionally, however, once a notice of

---

[1] 5 V.I.C. App. I, R. 60(b), 5 V.I.C. App. IV, R. 7 (1966).

appeal has been filed, the trial court is deemed to have lost its power to consider any further motions—including a 60(b) motion. C. Wright and A. Miller, 11 Practice and Procedure: Civil § 2873 (1973). Some courts, however, have developed a procedure whereby the trial court retains some jurisdiction over a case.

> [D]uring the pendency of an appeal the [trial] court may consider a Rule 60(b) motion. If it indicates that it is inclined to grant it, application can then be made to the appellate court for remand. The logical consequence is that the [trial] court may deny the motion, although it cannot, until there has been a remand, grant it. . . .

Id. at 265. Wright and Miller contend that this procedure is sound in theory and preferable in practice. Id. This court also is of the opinion that this is the better approach and that this court retains jurisdiction to consider defendant's motion to vacate summary judgment.

### Motion To Vacate

As grounds for their motion to vacate, defendants allege that they were defrauded by Peter Martin, the attorney for Pleasant Haven, Inc. Specifically, defendants allege that Martin (1) fraudulently represented the intent of the parties in the October 1978 agreement between Pleasant Haven and defendants; (2) executed the agreement with defendants without the defendants' attorney, and (3) was and still is acting on his own behalf because Pleasant Haven assigned its rights in the October agreement to Martin.

Defendants continually have alleged that they never agreed to assume personal liability on the October agreement. This court, however, in its June 17 summary judgment specifically held that defendants signed the agreement in their individual capacities. After making a detailed examination of the October agreement, the court found nothing to indicate otherwise.

Defendants now allege that the agreement indicates that they are personally liable because Martin defrauded them. They further argue that the October agreement was nothing more than a modification of a June 5, 1978 agreement between the same parties, which, they contend, clearly sets forth the personal non-liability of the defendants. A review of the June agreement, though, reveals nothing to support the defendants' contention. To the contrary, the June agreement is similar to the October agreement in that the

305

defendants signed in their individual capacities and were personally listed as "Buyers."[2]

Moreover, the court also finds defendants' allegations that they never agreed to personal liability to be in complete contradiction of the deposition testimony of Rhys Hodge. Hodge, who was the court-appointed examiner in the bankruptcy proceedings of Carib Resorts, Inc.,[3] testified that the defendants informed him that they had individually agreed to pay the Barclays' loan and that Carib Resorts, Inc., had never assumed the loan. Deposition of Rhys Hodge, February 9, 1981, p. 6.

Defendants' further assertion that Martin defrauded them by having them sign the October agreement in his office without notifying defendants' attorney, Thomas K. Moore, does not indicate fraud on Martin's part. From a reading of the pleadings and accompanying affidavits, it is apparent that defendants had known Martin for some time before the signing of the October agreement. In addition, defendants are not laymen, but businessmen and, as such, should have known whether or not to sign a contract without having their attorney present. Moreover, the allegation is not even properly before the court because it comes in the form of counsel's unsworn memorandum and is not contained in the lengthy affidavit of Thomas K. Moore, which was submitted in support of the motion.

Finally, defendants' allegation that Martin was acting on his own behalf because of the assignment by Pleasant Haven of its rights in the October agreement is more an ethical issue than one of fraud. Martin asserts that the assignment enabled him to sign in his own name or the name of the assignors. He also states that he is handling the case of Pleasant Haven on a contingent fee basis. The Code of Professional Responsibility provides that a contingent fee arrangement is permissible despite the fact that it gives a lawyer a financial interest in the outcome of the litigation. See ABA Code of Professional Responsibility, Canon 5, EG 5-7 and DR 5-103.

[2] The initial paragraph of the June 5, 1978 agreement reads:

Made this 5th day of June, 1978, by and between LARRY F. EVANS, WILLIAM F. HELM, and PLEASANT HAVEN, INC., as their interest may appear as Sellers and JOSEPH LaMALFA and ARNOLD W. FEINSTEIN or their corporate designee as Buyers.

Nowhere, in fact, in the June 5, 1978 agreement, does the name of any corporation appear, let alone that of the "corporate designee."

[3] This action springs from the purchase in 1978 by defendants and their corporate designee, Carib Resorts, Inc., of the leasehold interest, equipment and other assets of a business known as Galleon House.

■ The court thus finds that defendants have not presented this court with a sufficient basis for this court to conclude that Martin committed fraud on the defendants or that a hearing should be held on that contention. Accordingly, it is

ORDERED that defendants' motion to vacate this court's summary judgment be and hereby is denied.